Good morning, Your Honors. Andy Manley on behalf of Plaintiff Velay Siriphone. This is a case for breach of contract, breach of the covenant, and for punitive damages. This all started in 2005 due to a burglary, and Mr. Siriphone had a burglary in his garage. He then kindly reported it to the insurer who, for whatever reason, took a long time to investigate or took a long time to resolve this claim. It wasn't until two years later, 2007, when they actually paid the claim. And the issue today is whether there was a genuine dispute as to coverage, which is what defense has implied. Well, isn't it also whether there was a genuine dispute as to the amount of the loss, which is another element of the issue? Absolutely, Your Honor, but in order to have a genuine dispute, you must have to have a fair and proper investigation. In this situation, defense never once performed an adequate investigation, never once spoke to their insurer. Now, wait a minute. I thought the initial interview was supposed to be between Mr. Siriphone and his wife and the claims adjuster, wasn't it? Absolutely not. They never once spoke. I'm sorry. That wasn't my statement. My understanding was that the interview was supposed to have been, and when the claims adjuster showed up, only the wife was there. Is that not correct? That is correct, Your Honor. And that Mr. Siriphone had absented himself. Not that he was not supposed to be there, but it was his decision not to be there. Is that correct? It wasn't necessarily his decision not to be there. Well, whose decision was it? He had to run a business. All right, but he did have the opportunity to be there if he didn't have a conflict. Is that correct? Certainly. Okay, and so is it also not the case, per the record, that the claims adjuster was led to believe by Mrs. Siriphone that she was going to be speaking to them and that that was fine, and that Mr. Siriphone in deposition, didn't he say, yes, my English isn't that good, and we should only have one person speaking to them? Your Honor, that Is that what the deposition in essence said? I believe it did, but not exactly, Your Honor. They still had an obligation to speak to him. He wasn't present at the initial interview. However, they never once went back, and after they spoke to Mrs. Siriphone, who made the statement of $400,000 loss and retracted it, they never once went back to confirm that, to verify whether that really was a $400,000 or a $100,000 loss. They could have contacted other garages. They could have contacted Why would what other garages have be evidence of what Mr. Siriphone had? Well, it would show that this is approximately the value, because they went from a $7,000 value to a $100,000 value after the settlement. And so there was obviously a huge discrepancy in value, and we kept telling them that, look, you can't run a business of this size, of this nature, with this many lifts, this many vehicles to repair, with that small of a tool price. And so that's why it was unfair for them to just assume Mrs. Siriphone had the correct amount, and then not ever once speak to Mr. Siriphone. Who provided the much lower figure that ended up in the police report? The police report, my understanding, was very early on. They just asked him, okay, what Asked who? Mr. Siriphone Mr. I believe it was Mr. Siriphone, and they just asked what, and he didn't have an opportunity to fully explain it. What did he say?  To the police? I'm unsure, Your Honor. It was just in something like the $2,000 or $7,000 range, as I recall. Correct, but he did not have the opportunity, it had just occurred, and he did not have the opportunity to fully inventory his shop. You're telling us that standing here today, you do not know the number he gave the police? He gave them a blueprint. My question is, are you telling the panel, standing here today, familiar with this case, that you do not know the number he gave to the police? I believe it was, it was an amount, it was a number, it was a value, it was a number, a tool. But you don't know what that is? Correct, Your Honor. Standing here today? Correct. Did you represent him earlier on? Yes, I've had this case from 2005, Your Honor. I see. Anything else? Yes, Your Honor, I believe that there just wasn't... It isn't already in your brief? Yeah, Your Honor, there wasn't an adequate investigation. They never once spoke to... That wasn't my question. Do you have anything that wasn't, isn't already in your brief? Other than the fact that they didn't calculate correctly either. Even their own number that they're offering, the $7,000 that they offered, wasn't calculated correctly. When I advised them that, I said, look, why don't you figure out your own calculations? Is it right? And he could not figure it out himself in deposition. And so they themselves were sloppy in that. So they didn't even investigate their own numbers, their own offer. They didn't investigate who their insured was on the policy. And so I... In order to have the genuine dispute, you'd actually have to have an investigation. I don't believe that was the form today. All right. Thank you. Counsel? Sir? Do you have anything to add that isn't already in your briefs? The only... Just briefly, Your Honor. And that would be that the amount of the tools claimed as having been stolen in the police report was $1,700. There was another $350 alleged in drill bits and $200 in cash. The initial inventory that came in to acceptance was for $97,000. Despite the discrepancy, acceptance gave full credit to that $97,000 figure in terms of the quantity of tools that were taken. And I think it was approximately 57 tools added up to $97,000. What they didn't give full credit to was what was the value of those tools. They checked first on the Internet. Then, of course, they obtained the price catalog. They concluded even without receipts that the value, because they hadn't received receipts, that the value was much closer to $37,000. Those were the numbers that acceptance was working with. Even after they resolved the issue of should the coverage limit be $80,000 or $100,000, and even though the district court characterized that as an acknowledgment by the plaintiff's attorney in the brief, that that was at best a mistake, which is not bad faith. Even after the issue of the coinsurance was resolved and acceptance gave full credit to that $37,000 figure, they then accepted an additional priceless or inventory of $5,000 worth of tools. So they got to $43,000. When they offered that number, the response was, we're going to submit a new priceless. Three months later, a new priceless comes in, or inventory, without any supporting documentation. So they're now up to $150,000, which began from a $2,000 claimed loss. I could not find it in the record. It is in the record for whatever it is worth, Your Honor. The information provided to the police was by Mrs. Serafone. There is no doubt, the record is clear that acceptance attempted and believed at the outset they were going to meet with both Mr. and Mrs. Serafone when they called on July 1. When they arrived on July 12, present only was Mrs. Serafone. We know that. I'm sorry. Who did you say gave the information to the police? In the record somewhere, Your Honor, it is Mrs. Serafone who was present when the police arrived. I was looking for it when we were sitting there, and I just could not find it. I don't think I have anything more to add unless the court has some additional questions. No. Thank you. Thank you, Your Honor. All right. The case is submitted. Thank you. The next case on calendar is Guate Christian Fellowship v. County of San Diego. Pencil.
judges: Wolf, Hawkins, Fisher